J-S57031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT LEE SARGENT, | : | |
| | : | |
| Appellant | : | No. 1989 MDA 2018 |

Appeal from the Judgment of Sentence Entered December 14, 2017
in the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000228-2016

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 13, 2020**

Scott Lee Sargent ("Sargent") appeals from the judgment of sentence imposed following his convictions for five counts of attempted murder of a law enforcement officer, six counts of assault of a law enforcement officer, one count of aggravated assault, nine counts of recklessly endangering another person, and one count of harassment.[1] We affirm.

Sargent's convictions arose from an October 17, 2015 incident in the parking lot of a Wal-Mart in Wilkes-Barre Township, Pennsylvania. That morning, Sargent, his girlfriend, and two other individuals drove from the Pottsville, Pennsylvania, area to Wilkes-Barre to visit a nearby casino. After spending several hours drinking at the casino and using drugs, Sargent became agitated after he saw two "unknown individuals," who he believed had

_____

[1] 18 Pa.C.S.A. §§ 901(a), 2507(a), 2702.1(a), 2702(a)(1), 2705, 2709(a)(1).

been following him and his girlfriend for several months. Sargent and his girlfriend left the casino and drove to the Wal-Mart parking lot. His girlfriend entered the store to purchase various items, and Sargent again saw the "unknown individuals" in the parking lot. Sargent pulled his 2002 Mitsubishi Eclipse around to the rear of the Wal-Mart, and began firing shots from his AR-15 style rifle, which was equipped with a scope and a high-capacity magazine, into the garage doors of the attached tire and lube shop.

Employees of the tire and lube shop immediately called police. Police responded to the scene within minutes, and Sargent proceeded to open fire in the direction of the officers. During the standoff, which spanned approximately fifteen minutes, Sargent fired multiple rounds in the direction of the officers, and damaged multiple police, fire, and civilian vehicles. Finally, Wilkes-Barre Township Police Officer Alan Gribble ("Officer Gribble") approached Sargent's position and shot Sargent in the abdomen as Sargent lifted his rifle towards him. Sargent was subsequently arrested and taken to the hospital for treatment.

Sargent was charged with multiple counts of attempted murder of a law enforcement officer and related charges. A jury trial was held on October 16, 2017, during which the jury heard testimony from a variety of officers who responded to and investigated the scene, the Wal-Mart employees who originally called police, the emergency medical technicians who treated Sargent, and a Wal-Mart customer whose vehicle was shot by Sargent. Sargent himself also testified that he fired the first shots into the garage doors

to scare away the "unknown individuals" who were following him, and subsequently fired in self-defense after being fired upon by responding officers. N.T., 10/16/17, at 415-16. Sargent was found guilty of the above-mentioned charges.

The court deferred sentencing and ordered a pre-sentence investigation report, and conducted a sentencing hearing on December 14, 2017. At the hearing, the trial court heard testimony from family members of officers involved in the shooting. It was also revealed at the sentencing hearing that Sargent had acquired a tattoo at some point between his trial and the sentencing hearing. The tattoo depicted a skeleton overseeing a cemetery with five tombstones; each tombstone listed the name of the five police officers for which he was convicted of attempting to murder. N.T., 12/14/17, at 4-5. After considering the testimony and the pre-sentence investigation report, the trial court sentenced Sargent to an aggregate sentence of 179 to 358 years in prison, with an additional 90 days in prison, to be served consecutively.

Sargent did not file a direct appeal, nor did he file any pre-trial or post-sentence motions. On January 2, 2018, Sargent filed a *pro se* Petition under the Post Conviction Relief Act ("PCRA"),[2] challenging the effectiveness of his trial counsel. The court appointed PCRA counsel, and a counseled, supplemental, PCRA Petition was filed on October 24, 2018. The PCRA court

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

held a hearing on November 7, 2018, where the parties agreed that a breakdown had occurred concerning Sargent's request to file a timely direct appeal. The PCRA court, therefore, reinstated Sargent's direct appeal rights, *nunc pro tunc*, and permitted Sargent thirty (30) days in which to file a direct appeal. Sargent filed a counseled timely Notice of Appeal on December 6, 2018. PCRA counsel was subsequently permitted to withdraw, and Sargent's current counsel was appointed to represent Sargent for the purpose of the instant appeal. Sargent filed his court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, wherein he identified four issues for our review, each of which challenges the effectiveness of his trial counsel.

Ordinarily, claims of ineffective assistance of counsel should not be raised on direct appeal. ***Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013).[3] Rather, ineffective assistance of counsel claims must await collateral review. ***Id.*** at 563. Because Sargent's only claims involve ineffective assistance of counsel, we may not consider the merits of his claims. ***See id.*** As a result, we affirm the judgment of sentence, without prejudice to Sargent's right to raise his claims in a timely PCRA petition.

Judgment of sentence affirmed.

___

[3] A trial court may address claims of ineffective assistance of counsel on direct appeal when either "a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interest of justice," or the defendant seeks to litigate prolix claims, good cause is shown, and review is preceded by the defendant's knowing and express waiver of PCRA review. ***Holmes***, 79 A.3d at 563-64. However, Sargent does not present in his brief any argument as to why either circumstance is present in the instant appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/13/2020</u>